UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES FOR: | |
| FOR A WARRANT TO COLLECT PRECISE LOCATION DATA REGARDING A T-MOBILE TELEPHONE ASSIGNED CALL NUMBER (978) 930-8547 (Target Telephone 8547); | 17-mj-2028-MBB |
| FOR A WARRANT TO USE A CELL-SITE SIMULATOR TO FURTHER IDENTIFY AND LOCATE TARGET TELEPHONE 8547; | 17-mj-2029-MBB |
| FOR A WARRANT TO OBTAIN PRECISE LOCATION DATA REGARDING A T-MOBILE TELEPHONE ASSIGNED CALL NUMBER (857) 399-5118 (Target Telephone 5118); | 17-mj-2030-MBB |
| FOR A WARRANT TO USE A CELL-SITE SIMULATOR TO FURTHER IDENTIFY AND LOCATE TARGET TELEPHONE 5118 | 17-mj-2031-MBB |
| FOR A WARRANT TO OBTAIN PRECISE LOCATION DATA REGARDING AN AT&T TELEPHONE ASSIGNED CALL NUMBER (978) 430-5308 (Target Telephone #8); and | 17-mj-2032-MBB |
| FOR A WARRANT TO USE A CELL-SITE SIMULATOR TO FURTHER IDENTIFY AND LOCATE TARGET TELEPHONE #8 | 17-mj-2033-MBB |
| | **FILED UNDER SEAL** |

## AFFIDAVIT OF TFO MICHAEL PATTERSON

1. I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

2. I have been employed by the Wilmington Police Department in a full time capacity since 2008. Prior to that I worked for the Wilmington Police Department in a part time capacity, from 2002 to 2008. I was assigned to the Wilmington Police Department Detective Bureau in July of 2013. I am currently assigned to DEA - Task Force 4, Cross Boarders Initiative (CBI) as a Task Force Officer (TFO), and have been since October 2013. I also have a Bachelor's of Science Degree in Criminal Justice from The University of Massachusetts, Lowell.

3. During the course of my employment in law enforcement, specifically while assigned as a TFO with DEA, I have received specialized training regarding the activities of narcotics traffickers, including the methods used to package, store, and distribute narcotics, and the methods used by narcotics traffickers to conceal and launder the proceeds of their narcotics-trafficking activities. Over the course of my career in law enforcement, I have debriefed numerous defendants, informants, and witnesses with personal knowledge about narcotics-trafficking and the operation of narcotics-trafficking organizations. I have personally participated in all aspects of narcotics-trafficking investigations, including conducting surveillance, using confidential informants and conducting court-authorized interceptions of wire communications.

4. Based on my training and experience, I am aware that drug traffickers commonly use cellular telephones to communicate and further their drug-trafficking activities. However, drug traffickers are aware of law enforcement's use of electronic surveillance, and thus frequently endeavor to thwart detection by changing cellular telephone numbers, using multiple cellular phones at the same time, and/or utilizing prepaid cellular phones where the user of the

phone is not required to provide personal identifying information. I am also aware that drug traffickers frequently "drop" or change cellular telephone numbers and cellular telephones in an effort to thwart law enforcement's use of electronic surveillance. I am familiar with the manner in which narcotics traffickers use telephones, coded, veiled, or slang-filled telephone conversations when discussing their illegal business, in an effort to further prevent detection, and often use text messages or messaging applications and Voice Over IP (VOIP) systems in lieu of phone calls to avoid speaking over the telephone. I am familiar with the "street" language used by drug traffickers, as well as the methods they use to disguise conversation and operations.

## PURPOSE OF AFFIDAVIT

5. I submit this affidavit in support of an application for a specific location data and identifying data on four telephones identified further below. I seek an application for an Order pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. 2703(C)(1)(A), directing T-Mobile and AT&T to assist agents of the DEA by providing, for a period of 30 days, all information, facilities and technical assistance needed to ascertain the precise physical location of a target telephones, including but not limited to data indicating the specific latitude and longitude of, or other precise location information concerning the target telephones, including tower and antenna face or cell-site information (the "Requested Location Information"), and further to authorize law enforcement to employ an electronic investigative technique further described in Attachment C, to use cell site simulators, described further below, in order to further identify the cellular devices, for:

A. A T-Mobile wireless telephone assigned call number (978) 930-8547 ("Target Telephone 8547"), with no subscriber information, and used by UM8547, a/k/a Reynaldo;

B. A T-Mobile wireless telephone assigned call number (857) 399-5118 ("Target Telephone 5118"), subscribed to "In Prepaid None Customer," and used by UM5118, a/k/a Pingo.

C. an AT&T cellular telephone assigned call number (978) 430-5308, with no subscriber information ("Target Telephone 5308" or "Target Telephone #8"), used by UM5308, a/k/a NAGUA, a source of supply to the PATRONE DTO; and

Collectively, these three phones will be referred to as the "Target Telephones."

6. As discussed further below, probable cause exists to believe that Target Telephones described in Paragraph 5 are being used in furtherance of drug trafficking activities in the District of Massachusetts, and the requested information regarding the Target Telephones will constitute or lead to evidence regarding offenses involving the distribution of controlled substances, in violation of 21 U.S.C. § 841(a)(1); the use of a communication facility in the commission of narcotics trafficking offenses, in violation of 21 U.S.C. § 843(b); conspiracy to commit narcotics trafficking offenses, in violation of 21 U.S.C. § 846; and/or maintaining drug-involved premises in violation of Title 21, United States Code, Section 856 (collectively, the "Target Offenses"), as well as the identification of individuals who are engaged in the commission of the Target Offenses.

7. For the reasons set out in this Affidavit, I believe that UM8547, UM5118, and NAGUA are committing one or more of the Target Offenses, and that obtaining information about

the physical location of the Target Telephones and further identifying information about the Target Telephones as needed will help determine the approximate location of that UM8547, UM5118, and NAGUA, so that law enforcement agents can conduct physical surveillance of subjects of this investigation without compromising the covert nature of the investigation; will lead to identification of that UM8547, UM5118, and NAGUA and their criminal associates; and may assist in the seizure of drugs and drug proceeds.

**TARGET-SUBJECTS**

8. The Target-Subjects pertinent to the current requested orders and warrants are set forth below. The names of those Target-Subjects whose telephones are the subject of these warrants are in bold:

A. Juan Anibal PATRONE-Gonzalez, a/k/a "Flaco", a/k/a "Poppo", a/k/a "Carlos", YOB: 1990, is a Hispanic male whose last known address is 96 Boston Street, Methuen, Massachusetts, but is believed to reside at 29 Sheridan Street, Lawrence, Massachusetts. PATRONE uses a customer phone, (978) 908-7197 (Target Telephone #1), and two business phones, (978) 907-2289 (Target Telephone #2) and (978) 429-5585 (Target Telephone #3). Based on information provided by confidential sources, undercover officer (UC), and arrested couriers, investigators believe PATRONE is distributing multiple kilograms of heroin, fentanyl and cocaine every week. PATRONE has sold over 40 grams of fentanyl, purported to be heroin and over 30 grams of cocaine to CS#1 and the UC in this investigation. PATRONE is believed to be the leader of this drug trafficking organization (DTO) in which customers call TT#1 and order quantities of narcotics. PATRONE then dispatches couriers employed by the DTO while using TT#2 and TT#3 to make the deliveries and collect the drug proceeds. On March 2, 2017, interceptions were most recently authorized on TT#2 and TT#3. PATRONE has no known criminal convictions.

B. Santo Marino GUERRERO-Ruiz, a/k/a Caballo, a/k/a Caballito, aka Luis Rivera, a/k/a Richard Romero, a/k/a Ismael Rivera-Ayala, a/k/a Fernando Rosa-Torres, YOB: Multiple. GUERRERO is a Hispanic male believed to reside at 49/51 Buswell Street, Lawrence, Massachusetts. GUERRERO uses Target Telephone #5, Target Telephone #6 and Target Telephone #9; all of which telephones were intercepted on TT#3. GUERRERO has a criminal history under another name that includes a 2003 conviction for possession to distribute Class A (heroin) and Class B (cocaine) narcotics, for which GUERRERO was sentenced to probation. GUERRERO is the leader of the GUERRERO DTO and is a source of supply for heroin/fentanyl.

C. **FNU/LNU, a/k/a UM8547, a/k/a Reynaldo**. Based on intercepted calls, UM1850 is believed to play multiple roles in the DTO. He appears to assist PATRONE in preparing cut, to obtain drugs from PATRONE to resell, and to broker deals for PATRONE to obtain supply. UM1850 currently uses telephone number (978) 930-8547, which was intercepted on TT#2, TT#3 and TT#4.

D. **FNU/LNU, a/k/a UM5118, a/k/a Pingo**. Based on intercepted calls, UM5118 is believed to be a source of supply of both GUERERRO and BANI. UM5118 uses telephone number (857) 399-5118, and was intercepted on both Target Telephones #5 and #7 discussing sale of drugs.

E. **FNU/LNU, a/k/a UM5308, a/k/a Nagua.** UM5308 uses telephone (978) 430-5308 (Target Telephone #8), for which interceptions were authorized on March 2, 2017. UM5308 is believed to be a source of supply to GUERERRO, and has been intercepted over TT#5 discussing the sale of drugs to GUERRERO.

F. UM5906, a/k/a BANI. UM5906 is believed to be a source of supply for the PATRONE DTO. UM5906 uses telephone number (603) 205-5906 (Target Telephone #7).

**<u>PROBABLE CAUSE</u>**

9. In this investigation, authorization to intercept various telephones has been obtained as follows:

A. On November 30, 2016, the Honorable Indira Talwani, United States District Court Uudge, District of Massachusetts, signed an Order authorizing the interception of wire communications to and from Target Telephones #1 through #4. 16-MC-91357-IT. Interceptions began on December 2, 2016 and continued until December 31, 2016. The recorded interceptions were sealed on January 3, 2017.

B. On January 6, 2017, the Honorable Indira Talwani, United States District Court Judge, District of Massachusetts signed an Order authorizing the interception of wire and electronic communications to and from Target Telephones #2 through #4. Interceptions began on January 6 and continued until February 1, 2017. The recorded interceptions were sealed on February 2, 2017.

C. On February 1, 2017, the Honorable Indira Talwani, United States District Court Judge, District of Massachusetts, signed an Order authorizing the interception of wire and electronic communications to and from Target Telephones #2 through #4, and also authorization the interception of wire communications to and from Target Telephones #5 through #7. The recorded interceptions were sealed on March 3, 2017.

D. On March 2, 2017, the Honorable Indira Talwani, United States District Court Judge, District of Massachusetts, signed an Order authorizing the interception of wire and electronic communications to and from Target Telephones #2, #3, #5, #6, and #7, and wire communications to and from Target Telephones #4 and #8. That authorization expired on April 1, 2017, and the recorded interceptions will be sealed on April 3, 2017.

E. On March 31, 2017, the Honorable Indira Talwani, United States District Court Judge, District of Massachusetts, signed an Order authorizing the interception of wire and electronic communications to and from Target Telephones #2, #3, #5, #6, #8, #9, and #10, and wire communications to and from Target Telephones #2, #3, #6, and #8. Authorization for those interceptions will expire on April 30, 2017.

The intercepted calls described below were primarily in Spanish; all quotations are from draft translations and punctuation has been added for clarity. All listed times of telephone calls are approximate.

10. Moreover, on March 3, 2017, this honorable Court found probable cause to issue a specific location warrant for Target Telephone 5308. 17-mj-2009-MBB. That warrant expired on April 2, 2017. On March 9, 2017, this honorable Court found probable cause to issue specific

location warrants for Target Telephone 8547 and Target Telephone 5118. 17-mj-2012-MBB, and 17-mj-2013-MBB, respectively. Those warrants expire on Saturday, April 8, 2017. Investigators wish to renew these specific location warrants because the Target-Subjects have not been fully identified.

11. The primary reason that investigators have been unable to identify these Target-Subjects, UM8547, UM5118, and NAGUA, is because the specific location information from the service providers is given in too large a radius, sometimes as large as 2000 meters. In the conjested areas of Lawrence, the radius is simply too large to pinpoint the location of the Target-Subjects quickly enough to conduct effective surveillance, or to fully identify them and their co-conspirators. Thus, in addition to seeking the specific location information set forth in Attachment B, investigators also seek to collect identifying data on the telephones by using a cell site simulator (sometimes known as a triggerfish), as further described in Attachment C. By collecting specific identifying information about the Target Telephones, investigations should be able to much more quickly and precisely identify the exact location of UM8547, UM5118, and NAGUA because the location can be much more precisely determined with additional identifying information about the telephones.

**PROBABLE CAUSE THAT REYNALDO IS USING TARGET TELEPHONE 8547 IN FURTHERANCE OF THE TARGET OFFENSES**

12. On January 10, 2017, surveillance officers observed PATRONE arrive at 277 Merrimack Street, Lawrence, an identified stash house of the PATRONE DTO. Based on intercepted calls, I believe that PATRONE traveled to the stash house to mix 50 grams of suspected heroin for a customer, UM8547, a/k/a Reynaldo, when he was using used (857) 271-

6018, a prior telephone. Intercepted calls indicated that UM8547 wanted the strength "at about a six," meaning the ratio of additive or cutting agent, "a six," to the narcotics. (TT#3, Sessions 15940, 16074, 16214, 16232, 16236). PATRONE was observed arriving near the stash house in the same taxi that investigators had observed collect PATRONE at 29 Sheridan Street, Lawrence, Massachusetts (his residence), a few minutes earlier. While PATRONE was at the stash house mixing drugs for UM8547, a/k/a Reynaldo, he made calls to LUGO to pay money to a garage for work done on DTO vehicles, believed to involve the installation of hidden after-market compartments. Shortly thereafter, investigators also observed LUGO meet with an individual inside a truck parked directly in front of the garage.

13. On March 1, 2017, at approximately 2:13 p.m. (Session 45456), PATRONE placed an outgoing call from Target Telephone #3 to (978) 930-8547, and spoke to UM8547. PATRONE said, "Don't worry, you hear? I'll do the same thing for you. Whenever you are dry. When you are dry and you don't have anything, you'll see." Based on my training and experience and knowledge of this investigation, PATRONE promised UM8547 that PATRONE would supply him narcotics when UM8547 ran out ("when you are dry," "when you don't have anything").

14. On March 11, 2017, at 11:03 p.m. (Session 51177), PATRONE received an incoming call on Target Telephone #3 from (978) 930-8547, and spoke to UM8547. PATRONE asked UM8547 if he "had already cooked the small thing" and "if he has taken it out." Based on my training and experience and knowledge of this investigation, PATRONE wanted to know if UM8547 had prepared the additive ("already cooked the small thing") and taken it out of the oven ("if he has taken it out").

15. On March 12, 2017, at 2:03 p.m. (Session 51287), PATRONE received an incoming call on Target Telephone #3 from (978) 930-8547, and spoke to UM8547. UM8547 said that he "had a call for a white" and asked PATRONE if "he could get two whites." PATRONE said he would send him the address. Based on my training and experience and knowledge of this investigation, UM8547 wanted narcotics, likely fentanyl, from PATRONE ("two whites") because UM8547 had a customer who wanted some ("had a call for a white"). PATRONE agreed to "send him the address." At 2:06 p.m. (Session 51290), PATRONE placed an outgoing text on Target Telephone #3 to (978) 930-8547, that said, "Smith st lawrence ma." Based on my training and experience and knowledge of this investigation, PATRONE sent UM8547 to "Smith Street" in Lawrence to pick up the drugs.

**PROBABLE CAUSE THAT PINGO IS USING TARGET TELEPHONE 5118 IN FURTHERANCE OF THE TARGET OFFENSES**

16. On March 1, 2017, at approximately 2:20 p.m. (Session 7984), GUERRERO received an incoming call on Target Telephone #5 from (857) 399-5118, and spoke to PINGO, one of his sources of supply. PINGO instructed GUERRERO that when GUERRERO sends money to PINGO through PINGO's runner, not to tell the runner the amount of the money. GUERRERO told PINGO that he told the runner the amount to avoid confusion. PINGO insisted that he not tell the runner the amount. PINGO then told GUERRERO that "something good" was going to arrive tomorrow or the day after. Based on my training and experience and knowledge of this investigation, PINGO had high quality narcotics arriving tomorrow or the day after ("something good"). GUERRERO intended to pay down his debt to PINGO, but PINGO wanted the amounts kept confidential from his runner.

17. On March 3, 2017, at approximately 7:26 p.m. (Session 8529), GUERRERO placed an outgoing call on Target Telephone #5 to (857) 399-5118, and spoke to PINGO. GUERERRO said, "Send someone to come pick it up so this guy doesn't go there with this money. Send someone to pick it up." PINGO said, "Where are you? This is a new guy that you don't know. I wanted you to meet this guy." Based on my training and experience and knowledge of this investigation, GUERRERO was ready to pay down his debt to PINGO, and wanted PINGO to send someone to pick up the money. At approximately 7:29 p.m. (Session #8533), GUERRERO placed another outgoing call from Target Telephone #5 to (857) 399-5118, and spoke to PINGO. GUERRERO said, "I'm going to send you eight to close the old debt. To only owe you what you sent last, you hear?" PINGO said, "No worries, my friend, you don't have problems with me." GUERRERO said, "Okay, I sent a complete eight." Based on my training and experience and knowledge of this investigation, GUERRERO sent $8,000 ("complete eight") to PINGO to close his old narcotics debt, and wanted to be sure that PINGO understood the money had been paid, and sent through PINGO's runner.

18. On March 8, 2017, at approximately 1:48 p.m. (Session #9779), GUERRERO placed an outgoing call on Target Telephone #5 to (857) 399-5118, and spoke to PINGO. PINGO said, "Don't suffer, because that thing is just like the stuff you like before." GUERRERO said, "Yes, well man, things have frozen up." PINGO said, "Well get to it, because I'm ready. You just have to let me know." GUERRERO said, "Things are frozen. I had pollito ("chick/customer") that used to call be twice a week, he was doing four and five. . .I think he's locked up because he used to call be twice a week, and it's been 15 days. . . That has halted me. I even have 20 velas ("candles") ready for him." PINGO said, "Yes." GUERRERO

said, "I knew his routing, it was 10 velas ("candles") every two days." PINGO said, ". . . okay. What I care most is for you to work." Based on my training and experience and knowledge of this investigation, PINGO offered GUERRERO narcotics ("that thing is just like the stuff you like before"), but GUERRERO did not immediately accept PINGO's offer to sell him more drugs ("things are frozen," "things have frozen up"). GUERRERO worried that one of his usual redistributors was "locked up" because he hadn't called in "15 days." That customer bought 10 candles, likely meaning 10 fingers, or approximately 100 grams, every two days. GUERRERO had 20 candles, likely meaning 20 fingers, or approximately 200 grams, waiting for him.

**PROBABLE CAUSE THAT NAGUA IS USING TARGET TELEPHONE #8 IN FURTHERANCE OF THE TARGET OFFENSES**

19. On March 7, 2017, at approximately 2:48 p.m. (Session 229), NAGUA placed an outgoing call on Target Telephone #8 to (857) 205-3187, and spoke to UM3187. UM3187 said, "But I added ten of the strong one. Because you know that I add three or four to the strong one, for sure. So, I added ten of that thing he was talking about. . . Even Villa called me yesterday to tell me that Pequeno had called asking him about that. . ." UM3187 continued, "So I was thinking and calculating. If I grab one of those things from Chiquito, the one you are talking about, and I add 200 to it, that's 10,000 pesos I can make." The call continued as NAGUA provided advice to UM3187 about how to talk to other traffickers to obtain money for the purchase. Based on my training and experience and knowledge of this investigation, I believe that UM3187 had located some good product, which would hold additive at a ratio of 10:1 ("But I added ten of the strong one"). UM3187 believed he could make $10,000 profit by adding 200 grams to one of those things ("and I add 200 to it, that's 10,000 pesos I can make"). The product

was so good that another supplier, Pequeno, was asking about the narcotics ("even Villa called me yesterday to tell me that Pequeno had called asking him about that").

20. On March 10, 2017, at approximately 12:27 p.m. (Session 485), NAGUA placed an outgoing call on Target Telephone #8 to (978) 566-4015, and spoke to UM4015, a/k/a Julio. NAGUA said, "GUERRERO has the 'guagua' (SUV/van) pawned as a guarantee. So he gave me…I have the 'guagua' . . . he told me that you have to give him 2,700 pesos." UM4015 said, "Yes, I have to give him something." NAGUA said, "He told me to call you so you could pass that. Listen, I have a little something around there, because I want to be on good terms with you . . . do you want to get something from me? I even gave him something to try it out." NAGUA said, "Yes, I am giving it at a reasonable price; I am giving it for 50 pesos.. . and GUERRERO tried it out. I told him to try it with an eight, but they did it with a seven." UM4015 said ". . . Let's wait for me to finish what I have there." Based on my training and experience and knowledge of this investigation, I believe that GUERRERO paid part of his debt to NAGUA by giving him an SUV/van as a guarantee of future payment ("GUERRERO has the guagua (SUV/van) pawned as a guarantee"). In addition, GUERRERO told NAGUA that NAGUA could directly collect the $2,700 owed to GUERRERO by UM4015 ("He told me that you have to give him 2,700 pesos . . he told me to call you so you could pass that"). NAGUA wanted to sell UM4015 more narcotics ("do you want to get something from me?"), and NAGUA believed the drugs were of good quality, and could hold additive in a ratio of 8:1 ("I told him to try it with an eight"). NAGUA further believed the drugs were reasonably priced at $50 ("50 pesos"), but UM4015 wanted to wait until he had sold his current narcotics ("let's wait for me to finish what I have there").

21. On March 18, 2017, at approximately 4:44 p.m. (Session 1048), NAGUA placed an outgoing call on Target Telephone #8 to (978) 908-7955, and spoke to UM7964. NAGUA said, "You know that Malden Mills has work here." UM7955 said, "Alright, Is Menor there?" NAGUA said, "No." UM7955 said, "Who's there?" NAGUA said, "The work is good." Based on my training and experience and knowledge of this investigation, NAGUA told UM7955 that narcotics were available at Malden Mills ("Malden Mills has work there") and that the quality of the narcotics was good ("the work is good").

**REQUESTED PHONE LOCATION WARRANTS**

22. Based on the information set forth above, and my training and experience, I believe that UM5118 is currently using the Target Telephone (978) 399-5118 in furtherance of the Target Offenses, and that UM8547 is using Target Telephone (978) 930-8547 in furtherance of the Target Offenses, and that NAGUA is using Target Telephone #8 in furtherance of the Target Offenses, and that there is probable cause to believe that the Requested Location Information will constitute or lead to evidence regarding the Target Offenses, as well as the location of the Target Telephones. Further, I believe that UM5118, UM8547 and NAGUA are using the Target Telephones in the District of Massachusetts. The Requested Information is necessary to determine the approximate location of UM5118, UM8547, and NAGUA so that law enforcement agents can conduct physical surveillance of UM5118, UM8547, and NAGUA; identify other potential participants including other suppliers, runners, co-conspirators and customer/redistributors; and locate residences and stash locations. The Requested Location Information will permit agents to locate the Target Telephones and, therefore, UM5118,

UM8547, and NAGUA, and will facilitate physical surveillance of those persons in a manner that reduces the chances of compromising the covert nature of the investigation.

23. The execution of this warrant will not result in the seizure of any tangible property or any wire or electronic communication (as defined in 18 U.S.C. § 2510). To the extent that the warrant authorizes the seizure of any stored wire or electronic information, that seizure is expressly authorized by 18 U.S.C. § 2703(c)(1)(A).

24. WHEREFORE, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C.§ 2703(c)(1)(A), it is requested that the Court issue a warrant and Order authorizing agents of the DEA to obtain the Requested Location Information for a period of thirty (30) days.

25. IT IS FURTHER REQUESTED that, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A), T-Mobile and AT&T furnish and continue to furnish the DEA with all information, facilities, and technical assistance needed to ascertain the Requested Information; and that T-Mobile and AT&T, the service provider for the Target Telephones, further initiate a signal to determine the location of the Target Telephones on the service providers' network or with such other reference points as may be reasonably available and at such intervals and times as directed by the law enforcement agent serving the proposed order, and shall furnish the technical assistance necessary to accomplish the acquisition unobtrusively and with a minimum of interference with such services as that provider accords the user of the Target Telephones, at any time of day or night, owing to the potential need to locate the Target Telephones outside of daytime hours, for a period of thirty (30) days. The service provider is to be compensated by the DEA for reasonable expenses incurred in providing such facilities or assistance.

26. IT IS FURTHER REQUESTED that, in the event the service provider changes for the Target Telephones during the course of the thirty (30) day period, such monitoring may continue with the new service provider without further order of this Court.

27. IT IS FURTHER REQUESTED, to avoid prejudice to the Government's criminal investigation, that this Order be SEALED, except that copies of the Court's Order in full or redacted form may be maintained by the United States Attorney's Office, and may be served on Special Agents and other investigative and law enforcement officers of DEA, federally deputized state and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers, and T-Mobile and AT&T as necessary to effectuate the Court's Order.

28. IT IS FURTHER REQUESTED that T-Mobile and AT&T and its agents and employees, not disclose or cause a disclosure of the Order or the request for information, facilities, and assistance by the DEA, or the existence of the investigation to any person other than those of their agents and employees who require this information to accomplish the services hereby ordered. In particular, T-Mobile and AT&T and its agents and employees, shall not make such disclosure to any lessee or telephone subscriber of the existence of this application, the warrant and Order, or the execution of the warrant, until such person is notified by the government. Such an order is justified because notification could seriously jeopardize the ongoing investigation by giving UM5308 or his associates an opportunity to destroy evidence, notify confederates, intimidate witnesses, or flee from prosecution. The government will notify T-Mobile and AT&T within 30 days of the conclusion of the criminal investigation described in this affidavit, unless such period is extended by the Court.

**REQUESTED CELL-SITE SIMULATOR WARRANTS**

29. WHEREFORE, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A), as further described in form in Attachments C, to further determine the identification and precise location of the Target Telephones.

30. Once the further identification and specific location of the Target Telephones has been made, information regarding any other telephones besides the Target Telephones will be deleted; information regarding the Target Telephones will be preserved and sealed for production in discovery, if required.

31. IT IS FURTHER REQUESTED that the Court authorize execution of the warrants at any time of day or night, owing to the potential need to identify the specific location of the Target Telephones outside of daytime hours because often the transfer of illegal narcotics and movement of drug proceeds happens at night.

32. IT IS FURTHER REQUESTED that the warrants, this Affirmation, the Application, and any and all related documents, as they reveal an ongoing investigation, be sealed until further order of the Court in order to avoid premature disclosure of the investigation, guard against flight, and better ensure the safety of agents and others, except that working copies may be served on the DEA and other investigative and law enforcement officers, federally deputized state and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers.

33. There is "reasonable cause to believe that providing immediate notification of the execution of the warrant may have an adverse result." 18 U.S.C. §3103a(b)(1). Providing prior

notice to the users of the Target Telephones would seriously jeopardize the ongoing investigation, as such a disclosure would give those persons an opportunity to destroy evidence, change patterns of behavior, notify confederates, flee, or continue flight from prosecution. Because there is reasonable cause to believe that providing immediate notification would seriously jeopardize the investigation, the United States also requests that the warrant delay notification of the execution of the warrant for a period not to exceed 30 days after the end of the authorized period of use of the electronic technique
(including any extensions thereof), in accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3).

Michael Patterson
Task Force Officer
U.S. Drug Enforcement Administration

Subscribed and sworn to before me,
this 3 day of April 2017.

Marianne B. Bowler, USMJ
HONORABLE MARIANNE B. BOWLER
United States Magistrate Judge
District of Massachusetts

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

## T-Mobile

## ATTACHMENT A

Information about the location of the mobile phone assigned the particular call numbers referenced in the warrants (the "Target Telephone"), whose service provider is T-Mobile, a company that accepts process at 4 Sylvan Way, Parsippany NJ 07054.

## ATTACHMENT B

All information about the location of the Target Telephone described in Attachment A for a period of thirty days, during all times of day and night, including:

1. E-911 Phase II data;
2. GPS data;
3. latitude-longitude data;
4. other precise location information;
5. data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the Target Mobile Phone; and

This warrant does not authorize the collection of any content of any communications.

T-Mobile must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Information about the location of the Target Mobile Phone unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the Target Mobile Phone on T-Mobile's network,

and at such intervals and times directed by the government. The government shall compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of Information about the location of the Target Telephone. *See* 18 U.S.C. § 3103a(b)(2)

T-Mobile shall not disclose the existence of the search warrant to the listed subscriber or to any other person. *See* 18 U.S.C. § 2705(b). The government shall notify T-Mobile within 30 days of the conclusion of the criminal investigation described in the application, unless such period is extended by the court in accordance with § 2705(b). After such notification, T-Mobile shall no longer be bound by the nondisclosure order. T-Mobile may also inquire with the government about whether non-disclosure is still necessary, and the government shall respond promptly to such inquiries.

## ATTACHMENT C
## CELL-SITE SIMULATOR WARRANT

This Warrant authorizes the officers to whom it is directed to determine the identity and specific location of the specified target cellular device by collecting and examining:

1. Radio signals emitted by the target cellular device and other cellular devices within the area for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. Radio signals emitted by the target cellular device and other cellular devices within the area in response to radio signals sent to the cellular device by the officers, for a period of thirty days, during all times of day and night.

3. This warrant does not authorize the interception of any telephone calls, text messages, other electronic communications, and this warrant prohibits the seizure of any tangible property. The Court finds reasonable necessity for the use of the technique authorized above. *See* 18 U.S.C. § 3103a(b)(2).

4. Once the further identification and specific location of the target cellular device has been made, information regarding any other telephones besides the target cellular device will be deleted; information regarding the target cellular device will be preserved and sealed for production in discovery, if required.